RUTH W. EASTER, ADMINISTRATRIX OF THE ESTATE OF BOBBY LEE EASTER, DECEASED v. LEXINGTON MEMORIAL HOSPITAL INC.; DR. JAMES A. CLINE; DR. LLOYD D. LOHR; DR. C.F. MEADE; LEXINGTON CLINIC FOR WOMEN, P.A.; AND NORTH CAROLINA BAPTIST HOSPITALS, INC.

No. 8022SC363

(Filed 4 November 1980)

**Physicians, Surgeons and Allied Professions § 16.1– medical malpractice action – no doctor-patient relationship**

In a medical malpractice action to recover for the death of plaintiff's intestate from tetanus in conjunction with other injuries, the evidence on motion for summary judgment failed to show that a doctor-patient relationship ever existed between defendant and plaintiff's intestate, and summary judgment was properly entered for defendant, where it tended to show that plaintiff's intestate was brought to a hospital emergency room, along with several other patients, for injuries sustained in a hotel fire; the intestate was suffering second and third degree burns, lacerations and abrasions, and a broken arm; defendant was the physician on duty in the emergency room; an obstetrician who was skilled in the treatment of burns offered his assistance to defendant; defendant pointed in the direction of the intestate and suggested that the obstetrician "see that one over there"; the obstetrician volunteered his help to the intestate and the intestate consented; the obstetrician questioned the intestate concerning the need for tetanus shots and ordered tetanus toxoid on the basis of his answers; and a recital in the hospital records that defendant "saw the patient in the emergency room" was based on the erroneous assumption that defendant treated the intestate since defendant was on duty in the emergency room.

APPEAL by plaintiff from *Washington, Judge.* Judgment entered 15 November 1979 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 10 October 1980.

This is an appeal by plaintiff from the entry of summary judgment in favor of Dr. James A. Cline in a wrongful death action alleging medical malpractice against several defendants. Plaintiff's intestate, along with several other persons, was burned in a hotel fire and treated at Lexington Memorial Hospital Emergency Room. Five days later, after developing tetanus, decedent was transferred to the North Carolina Baptist Hospital and subsequently died of tetanus complicating a configuration of other injuries. Plaintiff brings this action alleging negligence by the defendants in supplying medical care to plaintiff's intestate. All parties filed answer denying negligence. The defendant Cline filed motion for summary judgment, which was allowed. Subsequently, plaintiff filed a motion to set aside the summary judgment as to Dr. Cline, and this motion was denied. Plaintiff appeals. The action remains pending against the defendants other than Dr. Cline.

*Michael J. Lewis and Teresa G. Bowden for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by Jackson N. Steele and J. Robert Elster, for defendant appellee Dr. James A. Cline.*

HILL, Judge.

The sole question before this Court is whether the trial court erred in granting the defendant Cline's motion for summary judgment and thereafter failing to set aside said judgment.

Evidence offered at the hearing on motion for summary judgment tended to show that the plaintiff's intestate was brought to the emergency room of Lexington Memorial Hospital [hereinafter Lexington], along with several other patients, for injuries sustained in a fire at a local hotel. Mr. Easter was suffering second and third degree burns, lacerations and abrasions, and a broken arm. Forsyth Emergency Services, P.A., was under contract with Lexington to render emergency room care to the extent that facilities were available and to the

extent that one qualified physician would be capable of rendering such service. Dr. James A. Cline, an employee of Forsyth Emergency Services, P.A., Inc., was on duty.

Dr. Lohr, an obstetrician-gynecologist, who had specialized in the treatment of burns, was at the hospital checking his patients. He saw the fire victims being wheeled on stretchers into the emergency room. Seeing there were too many people for one person to handle, Dr. Lohr offered his assistance to Dr. Cline, who pointed in the direction of Mr. Easter and said: "Why don't you see that one over there?"

Dr. Cline never told Dr. Lohr to do anything. Rather, Dr. Cline pointed in Mr. Easter's direction as a suggestion. Dr. Lohr advised Mr. Easter that he was not working in the emergency room but had volunteered to help. Mr. Easter said, "Thank you." Dr. Lohr was under the impression that Dr. Cline had seen Mr. Easter, but never saw Dr. Cline in decedent's presence.

Upon questioning, it was determined that Mr. Easter had no family in the general area who could be called in for consultation. As a part of his treatment, Dr. Lohr asked Mr. Easter if he had received tetanus shots before, and Mr. Easter replied that he was not sure, but thought so. Mr. Easter advised Dr. Lohr that he had been in the army and also had suffered a traumatic amputation of his left arm. Thereupon, Dr. Lohr ordered tetanus toxoid which the doctor felt was sufficient immunization.

After emergency treatment, Dr. Lohr asked Dr. Cline what was to be done with Mr. Easter. Dr. Cline stated that the patient was to be admitted to Lexington under the supervision of Dr. Meade. The hospital records indicate that Dr. Cline's name was inserted as the physician in charge of Easter and then removed, and the name of Lohr/Meade inserted. Dr. Cline did not ask anything about the nature and extent of Mr. Easter's injuries.

The only statement anywhere in the record to the effect that Dr. Cline rendered medical treatment to Bobby Lee Easter is a recital in the admission note and discharge summary prepared by Dr. Meade after Mr. Easter's admission to the hospital. Those records recite Dr. Meade's understanding of the history of Mr. Easter's injury and treatment in the emergency

room, and state: "Dr. Cline saw the patient in the emergency room." By way of sworn affidavit, Dr. Meade acknowledged that those recitals were in error and were simply assumptions on his part at the time because he knew that Dr. Cline was on duty in the emergency room that evening and had treated some of the other victims of the hotel fire. Dr. Meade affied that he had mistakenly assumed Dr. Cline had treated Easter. The hospital records indicate a charge was made by Dr. Lohr for his services which was paid by Mr. Easter. However, Dr. Lohr denied making a charge and says such charges were made by persons other than himself. The notations on the hospital records have not been traced to Dr. Cline in any way.

The hospital had a mass disaster plan, which could have been initiated by Dr. Cline. However, in the opinion of Dr. Lohr, with his volunteering, it was not necessary to initiate the program.

We are aware that Rule 56 provides that before summary judgment may be had, the materials filed must show affirmatively that not only would the moving party be entitled to judgment based on the evidence within the material, but such materials must show there can be no other evidence from which a jury could reach a different conclusion. *Millsaps v. Contracting Co.*, 14 N.C. App. 321, 188 S.E. 2d 663, *cert. denied* 281 N.C. 623 (1972).

We have examined the record and find no evidence that a doctor-patient relationship ever existed between Dr. Cline and Mr. Easter. An emergency existed, and Mr. Easter had been wheeled into the emergency room. Still, Dr. Cline had no duty to leave the person he was treating at the moment to examine Easter. Another physician, Dr. Lohr, recognized the emergency and volunteered his help to both Dr. Cline and Mr. Easter. Dr. Cline simply pointed to Mr. Easter, and Mr. Easter consented to treatment by Dr. Lohr.

Plaintiff contends that since Dr. Cline was an employee of Lexington, then Dr. Lohr was Dr. Cline's assistant and an agent of Lexington. We find nothing in the record in this case to support respondeat superior liability on Dr. Cline. *See Rucker v. Hospital*, 285 N.C. 519, 206 S.E. 2d 196 (1974).

Neither do we agree that Dr. Cline was negligent in failing to see Mr. Easter. There were several patients in the emergency room. Dr. Lohr, a physician skilled in treating burns, had volunteered to see Mr. Easter. There is no evidence that declaring an emergency would have provided better treatment. Declaring an emergency may have brought in more doctors, but Mr. Easter already had one — Dr. Lohr. No act or omission to act by Dr. Cline was the proximate cause of Mr. Easter's developing tetanus. Dr. Lohr questioned Mr. Easter as to the need for tetanus shots and made a decision based on answers given by Mr. Easter. This was his decision based on his judgment alone.

Dr. Cline's defense rests on his claim that he did not see Mr. Easter. Dr. Meade, a defendant (now deceased), supports the claim by affidavit, and Dr. Lohr by interrogatories. We find no evidence in rebuttal. Plaintiff contends these are interested parties, and their testimony is insufficient on a motion for summary judgment. Our Supreme Court has held that summary judgment may be granted for the party with the burden of proof on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when summary judgment is otherwise appropriate. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976).

An examination of the record leads us to the conclusion that, at most, only latent doubts may exist as to the testimony offered by Dr. Cline through affidavits and interrogatories.

Nor are we impressed with plaintiff's argument that discovery had not been completed and that plaintiff had also opposed the motion by Rule 56 affidavit. Ordinarily, the completion of discovery is required prior to granting summary judgment in a medical malpractice suit so that the party can explore issues of malpractice. *Joyner v. Hospital*, 38 N.C. App. 720, 248 S.E. 2d 881 (1978). In this case, we observe that motion for summary judgment was filed 22 March 1979. Twice, on motion of plaintiff, the hearing was continued and orders permitting extension of time for discovery were allowed granting plaintiff

up through 7 September 1979. The court appears generous to plaintiff in her requests.

The judgments entered in this cause are

Affirmed.

Judges ARNOLD and MARTIN (Harry C.) concur.